Opinion issued November 24, 2004










In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00558-CR




JOHN MICHAEL ROMERO, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 179th District Court
Harris County, Texas
Trial Court Cause No. 898746




MEMORANDUM OPINION
          Appellant, John Michael Romero, pleaded not guilty to the offense of murder. 
A jury found him guilty and assessed punishment at 45 years in prison. Appellant
presents eight issues on appeal. In his first three issues, appellant contends that he
was denied effective assistance of counsel at both phases of the trial and that the trial
court erred in denying his motion for a new trial based on the alleged ineffective
assistance of counsel. In his fourth, fifth, and sixth issues, appellant contends that the
trial court erred in denying a recess to allow him to produce a material witness. In his
seventh issue, appellant contends that the trial court’s failure to charge the jury on
sudden passion was error. Appellant’s eighth issue alleges that the trial court erred
in overruling his objection to the State’s argument at punishment. We affirm.
BACKGROUND
          On January 9, 2002, Mark Mendoza was at Palmer’s Icehouse participating in
a pool tournament that had started the previous evening. After the tournament,
Mendoza started discussing other pool tournaments with Cassandra Lloyd and Lisa
Shimek while they stood outside in the parking lot of the icehouse. Mendoza told
Shimek that she had lost weight and was looking good and asked Shimek if he could
kiss her. Shimek said “no,” but Mendoza kissed her anyway. Lloyd told Mendoza
that he needed to apologize to Shimek, but he would not do so. Mendoza walked
back into the icehouse, followed by Lloyd, who continued to demand an apology by
yelling loudly at Mendoza as he walked away from her. At some point during this
yelling, Lloyd knocked over a chair or a barstool and she was asked to leave. Lloyd
and Shimek left the icehouse and, when they started their car, heard gunshots coming
from inside the icehouse.
          Philip Glover, a friend of Mendoza’s, saw the argument between Lloyd and
Mendoza in the icehouse. Glover walked over to Mendoza and told him to stop
arguing because there was no point in doing it. Mendoza turned and walked away
from Lloyd. Glover then walked to Lloyd and her friends, asked them to stop arguing
as well, and walked with them to the door of the icehouse. When Glover heard a shot
about two minutes later, he turned around to see where it had come from, saw
appellant firing a gun at Mendoza, and saw Mendoza falling to the floor. Glover had
not heard any fighting or indications of a confrontation between Mendoza and
appellant before the shots were fired. 
          Francisco Velasquez also witnessed the argument between Mendoza and Lloyd
in the icehouse. Velasquez testified that he helped escort Lloyd and her friends out
of the icehouse, that one of Lloyd’s friends asked him to retrieve some items they had
left inside, and that he agreed to do so. When he re-entered the icehouse, he saw
Mendoza and a few other men standing around appellant, who was bleeding on the
floor. Velasquez stated that, when he pulled Mendoza aside to find out what was
going on, appellant jumped up and started shooting. Velasquez also testified that
Mendoza did not have a weapon or anything else in his hands. 
          Mondo Mendoza (“Mondo”), Mendoza’s brother, testified that Mendoza
followed Lloyd out of the icehouse after their argument. Mondo said that he told
Mendoza to come back inside the icehouse and that, when Mendoza walked back
inside, appellant approached Mendoza and said something to him. Mondo testified
that Mendoza took umbrage at what appellant said and gave a reply. According to
Mondo’s testimony, the fight began when Mendoza grabbed appellant’s hand, which
was near the front of appellant’s pants, and started punching appellant. Mondo
testified that appellant and Mendoza were punching each other and moving toward
the pool table. Appellant and Mendoza hit the pool table and, according to Mondo,
Mendoza called out Mondo’s name and told him that appellant had a gun. Appellant
then pulled out the gun and shot Mendoza.
          Appellant’s account differs from that of the other witnesses. Appellant stated
that Mendoza and Lloyd were cursing each other and approaching each other from
separate sides of the room. Appellant stated that, because it appeared to him that
Mendoza was about to hit Lloyd, he approached them and tried to stop them. 
Mendoza and Lloyd stopped their argument, and the bartender, Christy Carter, called
appellant’s name and told him not to get involved. Appellant claims that, around 45
minutes to an hour after the argument between Mendoza and Lloyd, he heard
someone shouting behind him while he was shaking the hand of an acquaintance at
the bar. According to appellant, as he began to turn around Mendoza hit him on the
head before he could complete the turn, causing him to fall to the ground. People
then kicked him, and Mendoza gashed his face with a sharp object. Appellant claims
that he was surrounded by five persons who attacked him. Appellant testified that,
being in fear for his life, he grabbed the handgun he carried in his pants and fired five
times, killing Mendoza. Appellant ran out of the icehouse and, after throwing the gun
out of his car window, went to a friend’s house,. 
DISCUSSION
I.       Ineffective Assistance of Counsel
          In his first and second issues, appellant claims that he was denied effective
assistance of counsel. In his third issue, appellant argues that the trial court abused
its discretion in denying his motion for new trial based on ineffective assistance of
counsel. Appellant received a hearing on his motion for new trial, which contained
ineffective assistance of counsel as one of its claims. The hearing commenced on
July 17, 2003, was reconvened on July 24, 2003, and was recessed until July 31,
2003, at which time the trial court denied the motion. At the hearing on July 17,
2003, appellant’s lead trial counsel, Mike Hernandez, testified regarding his trial
strategy and the reasons for some of his actions. At the hearing on July 24, 2003,
Ramon Villagomez, co-counsel for appellant, also testified regarding the trial strategy
Hernandez employed.
 

          A. Standard of Review
          The standard of review for evaluating claims of ineffective assistance of
counsel is set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052,
2064 (1984). Appellant must show that (1) counsel’s performance was so deficient
that he was not functioning as acceptable counsel under the Sixth Amendment, and
(2) but for the counsel’s error, the result of the proceedings would have been
different. Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; Thompson v. State, 9
S.W.3d 808, 812 (Tex. Crim. App. 1999); Hernandez v. State, 726 S.W.2d 53, 55
(Tex. Crim. App. 1986); Gamble v. State, 916 S.W.2d 92, 93 (Tex. App.—Houston
[1st Dist.] 1996, no pet.).
          It is the defendant’s burden to prove ineffective assistance of counsel. 
Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; Gamble, 916 S.W.2d at 93. A
defendant must overcome the presumption that, under the circumstances, the
challenged action might be considered sound trial strategy. Strickland, 466 U.S. at
689, 104 S. Ct. at 2065; Thompson, 9 S.W.3d at 813; Gamble, 916 S.W.2d at 93. A
trial court’s ruling denying a defendant’s motion for new trial is reviewed for an
abuse of discretion. Salazar v. State, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001).
 

          B. Specific claims of ineffective assistance of counsel
          Appellant specifically claims he received ineffective assistance of counsel
because his trial counsel did not do the following: (1) subpoena a material witness
who could have testified in support of his self-defense claim; (2) conduct an
independent investigation of the facts; (3) inform and prepare appellant for trial; (4)
request a jury instruction on the lesser included offense of manslaughter; (5) request
a jury instruction on sudden passion; (6) introduce a potentially exculpatory
photograph; (7) conduct a meaningful voir dire examination; or (8) request a limiting
instruction on the use of appellant’s prior conviction. 
                    1. Failure to call or secure material witness
          Appellant argues that he received ineffective assistance of counsel because his
trial counsel did not subpoena or otherwise secure the attendance of Christy Carter
and other witnesses at the trial. Appellant proffered an affidavit from Carter during
the hearing on his motion for new trial. In the affidavit, Carter stated that Mendoza
had a bad temper, that Mendoza had prevented appellant from leaving the icehouse
by “getting in his face” and yelling at him, and that after someone hit appellant over
the head with a beer bottle, Mendoza stood in front of appellant with a pool cue and
continued yelling at him. 
          The general rule is that the failure to call witnesses does not constitute
ineffective assistance of counsel without a showing that the witnesses were available
to testify and that their testimony would have benefitted the defendant. King v. State,
649 S.W.2d 42, 44 (Tex. Crim. App. 1983); Melancon v. State, 66 S.W.3d 375, 380-81 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d). 
          Hernandez, appellant’s lead trial counsel, testified during the hearing on
appellant’s motion for new trial that Carter was located after trial had begun and that
when she was located, he twice requested a recess so he could have her testify. 
Villagomez, appellant’s co-counsel, testified to facts indicating that their action in
requesting a recess was merely a ploy and that they did not seriously want to use her
as a witness. Villagomez testified that not only was Carter not necessarily a good
witness as to self-defense, but that her testimony would have presented adverse issues
regarding appellant’s testimony. According to Villagomez’s testimony, appellant’s
trial attorneys did not really want Carter to testify, but, as trial strategy, represented
to the trial court that they wanted to call her as a witness. 
          Appellant has not shown that Carter’s location was known before trial, or that
her location could have been reasonably obtained before trial. Appellant has failed
to show that Carter’s testimony would have benefitted the defendant. 
 

                    2. Independent Investigation
          In support of his ineffective assistance of counsel claims, appellant argues that
his trial counsel did not conduct an independent examination of the facts. Appellant
states that Hernandez represented him for 16 months, but did not meet him in jail or
have a telephone conference with him, and that the only interaction Hernandez had
with appellant was in the courtroom holding cell the morning before each day of the
trial. During the hearing on appellant’s motion for new trial, Hernandez testified that
he did not investigate, did not visit the scene of the shooting for the purposes of
investigation, and did not interview prospective witnesses.
          Hernandez stated that his reason for not conducting an independent
investigation was because appellant’s father, and the attorney Hernandez took this
case from, did not hire an investigator as promised, and only gave Hernandez $700
for the case. However, Hernandez also testified that he spoke to appellant about the
facts of the case at length at one of the trial settings and that he discussed the case
with appellant again the morning before testimony began. Hernandez stated that he
discussed the defense of self-defense with appellant each time appellant came to the
court. Hernandez also testified that he had been to the icehouse before the shooting
and had visited the icehouse after the shooting, but was not sure if he had gone there
to investigate, or just to look around. Hernandez stated that he had access to the
State’s file, and that he looked at the offense report, statements of the witnesses,
pictures of the crime scene, and other information contained in the State’s file. 
Hernandez said he believed that he zealously defended appellant. 
           Counsel has a duty to make reasonable investigations or to make a reasonable
decision that makes particular investigations unnecessary. McFarland v. State, 928
S.W.2d 482, 501 (Tex. Crim. App. 1996) (citing Strickland, 466 U.S. at 691, 104 S.
Ct. at 2066). Such a decision not to investigate “must be directly assessed for
reasonableness in all the circumstances, applying a heavy measure of deference to
counsel’s judgments.” Id. In any event, we will not reverse a conviction unless the
consequence of the failure to investigate is that the only viable defense available to
the accused is not advanced and there is a reasonable probability that, but for
counsel’s failure to advance the defense, the result of the proceeding would have been
different. Id.
          Appellant has not established that the only viable defense available to him was
not advanced. The record affirmatively established that appellant’s trial counsel
offered testimony contending that the shooting was in self-defense, and the jury
charge contained an instruction allowing for acquittal if the jury found a reasonable
doubt based on the issue of self-defense. 
 

                    3. Preparing Appellant for Trial
          Appellant argues that his trial counsel did not prepare him for his testimony
and did not inform him that his prior criminal history could be brought up if he
testified. Appellant asserts that his lead trial counsel only prepared him for trial
during the middle of trial. He argues that the facts of this case are similar to those
found in Perrero v. State, 990 S.W.2d 896 (Tex. App.—El Paso 1999, pet. ref’d). 
The trial counsel in Perrero stated that he felt he was negligent in preparing Perrero
for cross-examination and Perrero himself testified that he never discussed the
testimony that he might give and that the decision to have him testify was made
without significant discussion. Id. at 899. In the present case, however, Hernandez
testified that he discussed the case with appellant at length, focusing on the
implications of the defense of self-defense. Hernandez testified that he prepared
appellant for his testimony, telling him what questions he planned to ask and what
questions he believed the prosecutor might ask. Hernandez also said that he spoke
to appellant about the possibility that his prior conviction could be raised and told
appellant some strategies to lessen the chance of any problems arising. Appellant has
not demonstrated that he was inadequately prepared to testify by his trial counsel.
 

                    4. Jury Instruction on Manslaughter 
          Appellant contends that his trial counsel was ineffective by failing to request
a jury instruction on manslaughter as a lesser included offense. At the hearing on the
motion for new trial, Hernandez was asked whether the decision not to request an
instruction on manslaughter was part of a trial strategy. Hernandez explained that the
decision not to request an instruction on manslaughter was part of his trial strategy
to pursue only the defense of self-defense. Hernandez believed that requesting both
jury instructions on manslaughter and self-defense would result in a loss of credibility
with the jury. Because a jury could have perceived manslaughter to be inconsistent
with self-defense and with appellant’s testimony that he shot at Mendoza because he
feared for his life, we cannot conclude that appellant’s trial counsel was ineffective
for strategically opting to pursue only the defense of self-defense. 
                    5. Jury Charge on Sudden Passion
          Appellant argues that his trial counsel’s failure to request a jury instruction on
“sudden passion” rendered his performance deficient in the punishment phase of trial. 
Hernandez, when asked at the hearing on the motion for new trial, stated that it was
not a strategic decision to forgo an instruction on “sudden passion.”


 A sudden
passion charge should be given if there is some evidence to support it, even if that
evidence is weak, impeached, contradicted, or unbelievable. Trevino v. State, 100
S.W.3d 232, 238 (Tex. Crim. App. 2003). The only evidence of appellant’s state of
mind at the time when he fired his gun was his statement “I was in fear of my life and
I panicked.” For a sudden passion charge, the evidence must show that appellant’s
mental state “rose beyond a bare claim of fear or was so strong and overpowering that
it rendered him incapable of rational thought and collected action.” Jones v. State,
963 S.W.2d 177, 180 (Tex. App.—Fort Worth 1998, pet. ref’d). Appellant does not
show that his mental state at the time of the fight rose beyond that of a bare claim of
fear or was so strong and overpowering that he was incapable of rational thought. 
                    6. Failure to Introduce Photograph
          Appellant argues that his trial counsel rendered ineffective assistance because
he did not request that certain photographs that showed injuries to appellant’s face
and head be entered into evidence. Appellant asserts that these photographs would
have provided some evidence that he was hit in the head and assaulted. Hernandez
did attempt to introduce the photographs at trial, and appellant testified that the
photographs were taken two days after the shooting and that they accurately depicted
his appearance at that time. An objection was made on the basis that the photographs
lacked foundation. The trial court sustained the objection. However, appellant’s
testimony was sufficient to establish a foundation for the admission of the
photographs. Photographs are authenticated by the testimony of any witness who has
personal knowledge that the particular item accurately represents the scene or event
that the photographs purport to portray. Huffman v. State, 746 S.W.2d 212, 222 (Tex.
Crim. App. 1988); Tex. R. Evid. 901. Because Hernandez laid the proper foundation
for the photographs, and offered them into evidence, he cannot be found ineffective
because the trial court did not admit the photographs into evidence.



                    7. Failure to Conduct a Meaningful Voir Dire
          Appellant asserts that his trial counsel did not conduct a meaningful voir dire
and that this failure constituted ineffective assistance of counsel. Specifically,
appellant argues that Hernandez did not conduct a voir dire examination on prior
convictions and deferred to the trial judge’s examination of the panel on the issue of
self-defense. However, Hernandez did ask questions of the prospective jurors, noted
that the trial judge had already discussed self-defense, asked the jury if they could
follow the law with respect to self-defense, and elicited information about the
potential jurors’ biases. Under these circumstances, any failure to conduct additional
voir dire is not ineffective.
8. Failure to Request Limiting Instruction on Use of Prior Conviction

          Appellant complains that his trial counsel erred by failing to request a limiting
instruction, either at trial or in the jury charge, on the use of appellant’s prior theft
conviction. On appeal, appellant asserts that Hernandez should have requested an
instruction limiting the jury’s consideration of his prior conviction for impeachment
purposes only. During his direct examination, appellant acknowledged that he had
previously been convicted of theft, that he believed that his punishment was 10 days
in jail, and that he was around 17 years old when the theft occurred. Appellant does
not state how his testimony regarding his prior conviction harmed him or how a
limiting instruction would have served him.
          During the hearing on his motion for new trial, appellant asked Hernandez
whether he requested a limiting instruction on prior convictions. Hernandez replied
that he believed he did. The record shows that he did not. Hernandez was not asked
about any trial strategy with respect to a limiting instruction. It is clear from the
record that trial counsel’s strategy for dealing with the conviction was to have
appellant testify about it during direct examination. An attorney could reasonably
elicit information concerning a misdemeanor prior offense during direct examination
as a means to appear to be forthcoming with the jury. Appellant has not shown that
the result of the proceedings would have been different if the jury charge contained
a limiting instruction directing the jurors to consider the misdemeanor theft
conviction for impeachments purposes only. We conclude that the danger of a jury
convicting appellant of murder merely because he was convicted of misdemeanor
theft as a young adult appears to be non-existent. We note that the State asked no
questions of appellant regarding his theft conviction. 
          We hold that appellant has failed to establish that Hernandez rendered
ineffective assistance and overrule his first and second issues. Further, we hold that
the trial court did not abuse its discretion in finding that Hernandez was not
ineffective, and overrule appellant’s third issue.
II.      Denial of a Continuance
          In his fourth and fifth issues, appellant asserts that the trial court’s denial of a
continuance


 to allow him to produce a material witness violated his right to due
process and to due course of law. In his sixth issue, appellant argues that the trial
court committed error by denying his motion for a new trial based on the denial of a
continuance. Appellant states that, after the State rested, his counsel requested a
continuance so Carter could be present to testify. The trial court denied the
continuance. After appellant’s testimony, his counsel again requested a continuance
to secure Carter’s presence. The trial court refused the request, stating that appellant
had declared that he was ready for trial.
          We review a denial of continuance under an abuse of discretion standard. 
Heiselbertz v. State, 906 S.W.2d 500, 511 (Tex. Crim. App. 1995); Merritt v. State,
982 S.W.2d 634, 636 (Tex. App.—Houston [1st Dist] 1998, pet. ref’d, untimely
filed). A motion for continuance must reflect sufficient cause for the continuance. 
See Tex. Code Crim. Proc. Ann. art. 29.03 (Vernon 1989). A motion for
continuance must be in writing and sworn to preserve the complaint for appellate
review. Matamoros v. State, 901 S.W.2d 470, 478 (Tex. Crim. App. 1995); Tex.
Code Crim. Proc. Ann. art. 29.03 & art. 29.08 (Vernon 1989). In the case of a
missing defense witness, the motion for continuance must include the facts expected
to be proved by the witness. Gentry v. State, 770 S.W.2d 780 (Tex. Crim. App.
1988); Tex. Code Crim. Proc. Ann. art. 29.06 (Vernon 1989). 
          Appellant’s initial motion for continuance, which was made orally before
appellant’s testimony, asserted only that Carter was a favorable witness to the
defense. It provided no information about her expected testimony. Appellant’s
second motion for continuance, which was also made orally after appellant’s
testimony, added only that he needed Carter to testify about whether appellant had
taken drugs during the night of the shooting.
          Appellant’s motions for continuance were not preserved for appellate review
because they were not in writing or sworn, nor did they provide the substantive facts
about which the witness was expected to testify. We overrule appellant’s fourth and
fifth issues. We also hold that the trial court did not err in denying appellant’s motion
for new trial based on the denial of his motions for continuance. We overrule
appellant’s sixth issue.
III.    Sudden Passion
          In his seventh issue, appellant argues that the trial court committed error by not
giving, sua sponte, a charge on sudden passion. A trial court is under no duty to
instruct the jury concerning the issue of sudden passion if it is not raised by the
evidence. Because the issue was not raised in this case, the trial court did not err by
not giving a charge on sudden passion. See Posey v. State, 966 S.W.2d 57, 62–63
(Tex. Crim. App. 1998) (“[T]his Court has never held a trial court commits ‘error’ by
failing to sua sponte instruct the jury on a defensive issue.”). We overrule appellant’s
seventh issue.
 

IV.    State’s Closing Argument-Punishment Phase
          In his eighth issue, appellant asserts that the trial court committed error by
overruling appellant’s objection to the prosecution’s remark in closing argument that
Mendoza’s son might ask later in life, “Hey, whatever happened to the guy who killed
dad? Whatever happened? What did the jury think my dad’s life was worth?”          At trial, appellant complained that the prosecutor’s statement was “prejudicial.” 
His issue on appeal claims that the prosecutor’s argument asked the jury to consider
evidence outside of the record and invited the jury to speculate on what sentence
would satisfy Mendoza’s family. Appellant’s complaint on appeal does not comport
with his objection at trial; therefore, his complaint on appeal is waived. See Coffey
v. State, 796 S.W.2d 175, 179 (Tex. Crim. App. 1990) (stating that trial court
objection must comport with point of error raised on appeal).
          We overrule appellant’s eighth issue.

CONCLUSION

          We affirm the judgment of the trial court. 


 
                                                             Sam Nuchia
                                                             Justice
 
Panel consists of Justices Nuchia, Alcala, and Higley.
Do not publish. Tex. R. App. P. 47.2(b).