IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00188-CR

 

Rachel Raines Irvin,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the 220th District Court

Bosque County, Texas

Trial Court No. 04-11-13809-BCCR

 



MEMORANDUM  Opinion



 








          A jury convicted Rachel Raines Irvin
of possession of methamphetamine in the amount of one gram or more but less
than four grams and assessed her punishment at three years’ imprisonment. 
Irvin contends in four points that: (1) the court erred by advising her that it
would not accept a plea of nolo contendere in a case in which the State was
recommending deferred adjudication; (2) she received ineffective assistance of
counsel because counsel failed to advise her of the availability of an “Alford[1]
plea”; (3) the court abused its discretion by denying her motion for new trial
based on the State’s inadvertent erasure of an in-car video recording made at
the site of her arrest; and (4) she received ineffective assistance of counsel
because counsel (a) did not file a proper continuance motion, (b) failed to
challenge the search and seizure of her van and its contents, and (c) failed to
identify and question potential witnesses.  We will affirm.

Background

          According to the testimony, DPS
Trooper Jay Sparkman received a citizen’s complaint about a van which was
driving “all over the road.”  The citizen pointed the van out to Sparkman who
began to follow it.  He noticed it driving on the shoulder, then moving back
into its lane and over to the centerline, then back.  Sparkman stopped the van.

          Sparkman testified that the driver and
sole occupant Irvin had difficulty locating her driver’s license or proof of
insurance.  He directed her attention to a black purse on the front passenger’s
seat and asked if it was hers.  When Irvin opened the purse, Sparkman noticed
an open coin purse inside which contained a small baggie with a white powdery
substance.  He also observed a glass smoking pipe beside the coin purse. 
Sparkman took possession of the purse and found Irvin’s driver’s license inside,
as well as several credit cards in her name and a credit card receipt from a Corpus Christi hotel.

          Irvin claimed that she did not know
what the white powdery substance was.  Sparkman described her as being very
nervous at the time.  He arrested her for possession of a controlled
substance.  A sheriff’s deputy and he searched the van and found several other
small baggies in a pocket in the driver’s side door and in other locations in
the van which had trace amounts of a similar powdery substance and also found
other glass smoking pipes with burnt residue.

          Sparkman testified that an in-car
video recording of the stop was made but inadvertently erased in the DPS office
by a secretary along with several other videotapes.

          The deputy who assisted Sparkman testified
that he showed the coin purse containing the methamphetamine to Irvin as she
stood behind the van and asked her if it was hers.  She said that it was.

          Irvin testified in her own defense. 
She denied knowledge or ownership of the methamphetamine.  She explained that
she had only recently returned home to Grand Prairie from Corpus Christi where
she had attended her mother’s funeral.  The van had been in her husband’s
possession for the three and one-half weeks she was in Corpus Christi.  He
drove the van there with their children for the funeral then returned to Grand Prairie.  Irvin later returned to Grand Prairie in a rental car.

          One day after she returned home, Irvin
decided to go back to Corpus Christi to settle her mother’s estate, so she
drove the van.  As a result of an emotional conversation by telephone with her
husband while in route, they decided that she would return to Grand Prairie and
he would drive her to Corpus Christi.  At that point, she was in Waco and got confused about directions.  She mistakenly turned northwest on Highway 6.

As Irvin approached Meridian, her husband called
again and told her he could not find their six-year-old daughter.  Irvin was
still upset from the last phone call and tried to talk to him as she drove
along the highway.  It was at that point that Sparkman stopped her van.  Irvin
explained that she was nervous because of the emotional trauma related to her
mother’s unexpected death and from the situation involving her missing
daughter.

Irvin testified that the black purse within
which Sparkman found the methamphetamine is not her purse, and she denied that
her current driver’s license or credit cards were in that purse.  Irvin
insisted that her purse was not in the front passenger’s seat but rather on the
driver’s side of the van.  She explained that there were at least three other
girls who had ridden in the van when her husband drove to Corpus Christi, but
she could not say who they were because she did not ride with them.

On cross-examination, Irvin conceded that she
had agreed with Sparkman that the items in the van were hers.  “I actually
sarcastically answered ‘yes’ to everything the officer had said to me as I just
wanted to get this over with.  I have never been arrested and it was annoying
to me, the things he was saying, so I just said everything in there was mine. .
. .”

She also testified on cross-examination about
Sparkman asking her when she had last used methamphetamine.

Prosecutor:         Well, if he
asked you when’s the last time you smoked meth would you have answered him?

 

Irvin:                 Actually
the way he said this to me, I know what you’re saying, he told me when was the
last time you smoked meth or whatever.  I’m not sure if he said meth or­—he
said yesterday, day before, a week ago and I just answered at the
appropriate—at whatever time I thought would just cease him from questioning me
and go ahead, put me to jail.

 

Prosecutor:         Well, you told
Trooper Sparkman that, in fact, you had smoked it about a week ago; isn’t that
right?

 

Irvin:                 No, sir.  I
agreed to what he was saying if it was yesterday or the day before yesterday, a
week ago.  I said yes, yes, whatever—everything is yes.

 

          When the prosecutor confronted her
about the driver’s license and credit cards found in the black purse, Irvin
insisted that the driver’s license must have been an older one because she had
her current license in the purse on the driver’s side of the van.  She
testified that she had reported all those credit cards stolen “quite a while
before this incident” and that her current credit cards were in the purse on
the driver’s side.

          Irvin further testified that she had
hoped the video recording would demonstrate that Sparkman had retrieved the
black purse from the van without really talking to her about her identification
and that she had told him that the black purse was not hers.  Irvin said that
she also told him about the situation involving her missing daughter and her
mother’s unexpected death and that she pleaded with him to let her call home to
see if her daughter had been found, which he did not allow.

          Irvin also testified that she had
never seen the coin purse from which Sparkman testified he recovered the
methamphetamine and that he did not show it to her when he arrested her.

          The State recalled Sparkman who
testified that Irvin did not just go along with his questions by admitting to
everything he asked.  He reiterated that Irvin unzipped then reached in the
black purse, exposing the leather coin purse within which the methamphetamine was
contained, when he called the purse to her attention.  He testified that Irvin
admitted to the deputy that the methamphetamine was hers.  He denied that she
said anything to him about a missing daughter.

Acceptance of Irvin’s Pleas

          Irvin contends in her first point that
the court abused its discretion by refusing to accept a plea of nolo
contendere in a case in which the State was offering deferred
adjudication.  She contends in her second point that she received ineffective
assistance of counsel because counsel failed to advise her of the availability
of an “Alford plea.”

          In North Carolina v. Alford,
the Supreme Court of the United States held that a criminal defendant may plead
guilty “even if he is unwilling or unable to admit his participation in the
acts constituting the crime.”  400 U.S. 25, 37, 91 S. Ct. 160, 167, 27 L. Ed.
2d 162 (1970).  The Court added however, 

                   Our holding does not mean
that a trial judge must accept every constitutionally valid guilty plea merely
because a defendant wishes so to plead.  A criminal defendant does not have an
absolute right under the Constitution to have his guilty plea accepted by the
court, although the States may by statute or otherwise confer such a right. 
Likewise, the States may bar their courts from accepting guilty pleas from any
defendants who assert their innocence.

 

Id. at 38 n.11, 91 S. Ct. at 168 n.11 (citations
omitted).

          Citing Alford, the Court of
Criminal Appeals has similarly concluded, “[I]t is settled that regardless of
the depth of one’s desire to enter a plea of guilty an accused does not have a
constitutional right to have it accepted by the trial court.”  Thornton v. State, 601 S.W.2d 340, 347 (Tex. Crim. App. 1979); accord
Mendez v. State, 138 S.W.3d 334, 344 n.42 (Tex. Crim. App. 2004).  If a
trial court has no constitutional duty to accept a guilty plea, then a trial
court certainly has no constitutional duty to accept a plea of nolo
contendere.

          Irvin cites article 26.13 of the Code
of Criminal Procedure as giving her the choice of whether to plead guilty or nolo
contendere.  See Tex. Code
Crim. Proc. Ann. art. 26.13 (Vernon Supp. 2005).  However, we read
article 26.13 as only imposing conditions which should be satisfied before a
court may accept a plea of guilty or nolo contendere.  

          Nevertheless, article 27.02 does provide that a defendant may plead
guilty, not guilty, or nolo contendere.  Id. art. 27.02 (Vernon 1989).  However, the fact that the statute permits a defendant to enter a plea of
guilty or nolo contendere does not equate to a requirement that a trial
court must accept either of these pleas.

          Accordingly, we cannot say that the
court abused its discretion by refusing to accept Irvin’s plea of nolo
contendere.  Thus, we overrule Irvin’s first point.

          Irvin cites an Iowa decision to
support her second point in which she contends her trial counsel provided
ineffective assistance by failing to advise her of the availability of an Alford
plea.  See Washington v. Iowa, 2005 Iowa App. LEXIS 176 (Mar. 16, 2005).

          A defendant bears the burden of
establishing an ineffective assistance claim by a preponderance of the
evidence.  Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005).  To prevail on an ineffective assistance claim, the familiar Strickland
v. Washington test must be met.  Wiggins v. Smith, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535, 156 L. Ed. 2d 471 (2003) (citing Strickland, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984)); Andrews v. State, 159 S.W.3d
98, 101-02 (Tex. Crim. App. 2005) (same).  Under Strickland, we must
determine: (1) whether counsel’s performance was deficient, and if so, (2)
whether the defense was prejudiced by counsel’s deficient performance.  Wiggins,
539 U.S. at 521, 123 S. Ct. at 2535; Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; Andrews, 159 S.W.3d at 101.

          It is undisputed from the testimony of
Irvin’s trial counsel at the hearing on her motion for new trial that counsel
did not advise Irvin of the availability of an Alford plea.  In Washington, the Iowa Court of Appeals held that prejudice is shown in this situation
if the defendant shows (1) she would have entered an Alford plea and (2)
she would have received a lesser sentence.  Washington, 2005 Iowa App. LEXIS 176, at **8-9 (citing Engelen v. United States, 68 F.3d 238, 241
(8th Cir. 1995)).

          Irvin did not clearly testify that she
would have entered an Alford plea if her attorney had told her of its
availability, but even if it could be inferred from her testimony that she
would have, there is nothing in the record to indicate that the State would have
extended its initial plea offer to her in exchange for such a plea.  See id.,
2005 Iowa App. LEXIS 176, at *13.  Nor is there any indication in the record
that the trial court would have accepted an Alford plea.  See Turley
v. State, 256 Ga. App. 385, 593 S.E.2d 916, 918 (2004).  Thus, Irvin failed
to establish by a preponderance of the evidence that she was prejudiced by her
attorney’s failure to advise her of the potential availability of an Alford
plea.  See Salinas, 163 S.W.3d at 740.  Accordingly, we overrule Irvin’s
second point.

Erasure of Video Recording

          Irvin contends in her third point that
the court abused its discretion by denying her motion for new trial because of
the State’s inadvertent erasure of the in-car video recording.

          Irvin cites this Court’s decision in Pena
v. State for the proposition that the destruction of potentially
exculpatory evidence violates due course of law under the Texas Constitution. 
166 S.W.3d 274, 281 (Tex. App.—Waco 2005, pet. filed).

          In Pena, the defendant raised
this claim by a pretrial suppression motion.  Id. at 277.  Here however,
even though Irvin’s counsel was aware of the erasure of the video recording
before trial, this issue was not raised until after trial.  Accordingly, Irvin
failed to make a timely objection to the State’s failure to preserve this
potentially exculpatory evidence.  See Tex.
R. App. P.  33.1(a)(1).  Thus, we overrule Irvin’s third point.

 

 

Ineffective Assistance

          Irvin contends in her fourth point
that she received ineffective assistance of counsel because counsel (a) did not
file a proper continuance motion, (b) failed to challenge the search and
seizure of the van and its contents, and (c) failed to identify and question
potential witnesses.

          Irvin raised the issue of ineffective
assistance in the trial court by motion for new trial.  At the hearing on
Irvin’s motion for new trial, Irvin called her trial counsel as her first
witness.  Trial counsel testified that he was appointed about a month before
Irvin’s trial.[2] 
Counsel testified that he made several phone calls to her, but Irvin was
usually too busy to talk when he called and promised to return his calls. 
However, Irvin never returned these calls.  Counsel testified that he discussed
the facts of Irvin’s case with her at the courthouse on the day he was
appointed.

          Irvin told counsel that the stop had
been recorded by Trooper Sparkman via an in-car camera.  Counsel was informed
however that the video recording had been accidentally erased.  He did not
believe the recording would be helpful in determining whether the
methamphetamine was found in the front passenger seat as Sparkman testified. 
On cross-examination, counsel testified that the State called the erasure of
the video recording to the jury’s attention during Sparkman’s testimony. 
Counsel testified that he did not challenge the search and seizure of Irvin’s
van and its contents because he felt that a suppression motion would have been
“frivolous.”

          Irvin testified that, when she
mentioned to counsel the possibility of contacting others who had been in the
van before her, counsel advised that he did not consider that to be relevant. 
She testified that counsel made no effort to contact any of the others who had
been in the van or her husband.  She did not recall counsel ever discussing the
search of the van with her.  She did tell counsel that the purse from which
Sparkman recovered the methamphetamine was not her purse.

          Irvin’s husband Stuart testified that
“[a]pproximately eight” people had access to the van before Irvin.  No one ever
contacted Stuart about testifying on Irvin’s behalf about the contents of the
van and who had access to it.  According to Stuart, some of the others who had
access to the van are “meth users.”

          We review a trial court's ruling on a
motion for new trial under an abuse-of-discretion standard.  Charles v.
State, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004).  When as here the motion
for new trial alleges ineffective assistance of counsel, we must determine
whether the trial court’s determination of the ineffective assistance claim and
denial of the motion for new trial were clearly wrong and outside the zone of
reasonable disagreement.  See Freeman v. State, 167 S.W.3d 114, 116-17 (Tex. App.—Waco 2005, no pet.); Bates v. State, 88 S.W.3d 724, 727-28 (Tex. App.—Tyler
2002, pet. ref’d).

          A defendant bears the burden of
establishing an ineffective assistance claim by a preponderance of the
evidence.  Salinas, 163 S.W.3d at 740.  We “must indulge a strong presumption that counsel’s conduct falls
within the wide range of reasonable professional assistance; that is, the
defendant must overcome the presumption that, under the circumstances, the
challenged action ‘might be considered sound trial strategy.’”  Strickland,
466 U.S. at 689, 104 S. Ct. at 2065 (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S. Ct. 158, 164, 100 L. Ed. 83 (1955)); Garcia v. State, 57 S.W.3d 436, 440
(Tex. Crim. App. 2001); Biagas v. State, 177 S.W.3d 161, 170 (Tex. App.—Houston [1st Dist.] 2005, pet. ref’d).

          Allegations of ineffective assistance
must be “firmly founded” in the record.  Salinas, 163 S.W.3d at 740. 
Thus, when a defendant contends that trial counsel failed to investigate or
present the testimony of certain witnesses at trial, the defendant must prove
that the purported witnesses were available and that their testimony would have
been helpful.  See Butler v. State, 716 S.W.2d 48, 55 (Tex. Crim. App.
1986); Jones v. State, 133 S.W.3d 307, 313 (Tex. App.—Fort Worth 2004,
no pet.); Melancon v. State, 66 S.W.3d 375, 379 n.5 (Tex. App.—Houston [14th Dist.] 2001, pet. ref’d).

          Here, Irvin contends that her trial
counsel conducted an inadequate pretrial investigation by failing to identity
and interview others who had access to the van.  Her husband would have
testified, if called, that others had access to the van, including some “meth
users.”  However, neither Irvin nor her husband identified any of these other
witnesses or what the subject matter of their testimony would be.

          Because the identity and availability
of the other witnesses and the subject matter of their testimony is unknown,
Irvin has failed to show that she was prejudiced by counsel’s failure to
identify and call these witnesses to testify at trial.  See Melancon, 66
S.W.3d at 380-81; cf. Butler, 716 S.W.2d at 56 (prejudice found where at
motion for new trial hearing two witness not called at trial testified that
another person committed the robbery and an alibi witness not called at trial
testified the defendant was at another location at the time of the robbery); Jones,
133 S.W.3d at 314-15 (prejudice found where at motion for new trial hearing
trial counsel testified that he failed to request a continuance when alibi
witnesses failed to show at trial and two of these witnesses testified the
defendant was with them at the time of the robbery).

          Thus, with respect to trial counsel’s
failure to call other witnesses on Irvin’s behalf, we are left to determine
whether Irvin established that she was prejudiced by counsel’s failure to call
her husband Stuart to testify.  However, Stuart provided only general
information about the fact that others beside Irvin had access to the van and
that that he was familiar with the contents of the van.  For example, Stuart
was not asked at the hearing on the motion for new trial to examine the purse
or other evidence offered at trial and state whether any of those items
belonged to Irvin.  He was not asked to identify what other persons had access
to the van.  He was not asked to confirm whether Irvin’s driver’s license and
credit cards had been stolen as she testified.  Nor was he asked to corroborate
Irvin’s testimony regarding the telephone conversations they had before she was
arrested.  Because of the general nature of Stuart’s testimony, we cannot say
that Irvin satisfied her burden of showing that she was prejudiced by counsel’s
failure to call Stuart to testify at trial.  See Melancon, 66 S.W.3d at
380-81; cf. Butler, 716 S.W.2d at 56; Jones, 133 S.W.3d at
314-15.

          Irvin next contends that trial counsel
provided ineffective assistance by failing to file a continuance motion because
counsel did not have adequate time to identify and interview these “other
witnesses” who may have provided favorable testimony.  However, because the
identity of these “other witnesses” remains unknown, we cannot say that Irvin
satisfied her burden to show that she was prejudiced by counsel’s failure to
file a continuance motion.  See Melancon, 66 S.W.3d at 380-81; cf. Butler, 716 S.W.2d at 56; Jones, 133 S.W.3d at 314-15.

          Irvin also challenges trial counsel’s
failure to challenge the search and seizure of the van and its contents.  The
trial record contains no evidence raising a dispute about the factual basis for
the stop of Irvin’s van.  Presumably, Irvin would seek to challenge Sparkman’s
testimony that the methamphetamine was in plain view when she opened the
purse.  To the extent that these “other witnesses” could have provided
additional testimony on this issue, the identity of these witnesses and the
subject matter of their testimony remains unknown.  Likewise, Irvin’s husband
provided no testimony which would bear directly on this issue.

          Thus, a ruling on a suppression
challenge would have been decided on the basis of a credibility determination. 
Irvin’s trial counsel testified in essence that this was a strategy he did not
believe worth pursuing.  Irvin has failed to present evidence to rebut the
presumption that counsel’s decision to not challenge the search and seizure of
the van and its contents “might be considered sound trial strategy.”  Strickland,
466 U.S. at 689, 104 S. Ct. at 2065; Garcia, 57 S.W.3d at 440; Biagas,
177 S.W.3d at 170.

          Because Irvin failed to establish by a
preponderance of the evidence that she was prejudiced by counsel’s failure to
call these “other witnesses” or file a continuance motion and because Irvin
failed to rebut the presumption that counsel’s decision to not challenge the
search and seizure of the van and its contents “might be considered sound trial
strategy,” we cannot say that the trial court’s determination of the
ineffective assistance claim was clearly wrong and outside the zone of
reasonable disagreement.  See Freeman, 167 S.W.3d at 116-17; Bates,
88 S.W.3d at 727-28.  Accordingly, we overrule Irvin’s fourth point.

We affirm the judgment.

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray concurs in the judgment, but not the opinion, without a separate
opinion.)

Affirmed

Opinion delivered and
filed January 25, 2006

Do not publish

[CR25]









[1]
          North Carolina v.
Alford, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).





[2]
          This was after Irvin’s retained
counsel withdrew.  According to the clerk’s record, Irvin’s trial counsel was
appointed on January 5, and voir dire was conducted on February 4.