In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00090-CV


______________________________




IN THE MATTER OF THE MARRIAGE OF


BRENDA KAY NELSON AND


TIMOTHY WAYNE NELSON




 


On Appeal from the County Court at Law


Hopkins County, Texas


Trial Court No. CV37,846




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 This case was tried in the County Court at Law of Hopkins County. Pursuant to authorization
of the Texas Supreme Court, this county court at law is allowed to electronically record proceedings. 

 Timothy Nelson has appealed the trial court's judgment. When a court reporter attempted
to transcribe the electronic recording of this trial, she discovered that the judge's voice could not be
heard.

 We abated this appeal, and on October 27, 2008, the trial court entered findings that (1) a
complete and accurate reporter's record cannot be prepared; (2) a significant portion of the record
is unavailable; (3) the missing portion is necessary to the appeal's resolution; and (4) no agreement
could be reached by the parties. See Tex. R. App. P. 34.6(f). The loss of the record is through no
fault of appellant. 

 On October 29, 2008, the trial court entered amended findings, entering the same findings
recited above, with the additional language: "The Hopkins County Court at Law concludes that
therefore a new trial shall be held for the Final Hearing of this matter on December 3, 2008, at 10:00
a.m., in accordance with Rule 34.6(f) of the Texas Rules of Appellate Procedure." 

 Because an appeal has been filed and the plenary power of the trial court over the judgment
has expired, the trial court has no jurisdiction over this case and therefore no authority to determine
whether a new trial shall be held or to set a date and time for said trial. Jurisdiction rests solely with
the court of appeals. Once this opinion has issued and this Court has determined that a new trial is
necessary and has remanded the case to the trial court for a new trial, and after the trial court
thereafter receives our mandate when issued under Tex. R. App. P. 18.1, the trial court will then have
jurisdiction to set a date and time for a new trial of this matter.

 Pursuant to Rule 34.6(f), we find the appellant is entitled to a new trial. We reverse the
judgment of the trial court and remand this case for a new trial.



 Bailey C. Moseley

 Justice


Date Submitted: November 4, 2008

Date Decided: November 5, 2008



 



nt-family: 'Times New Roman', serif">Memorandum Opinion by Justice Carter


O P I N I O N

            In June 2002, John Iverson, Jr., and three of his friends were asleep at the John Davis
Iverson, Sr., home. During the night, John Sr. and John Jr. had a fight. Ultimately, John Sr. shot
John Jr. with a nine millimeter handgun, causing injuries to his bladder and pubic area. John Sr.
asserts that the shot was fired in self-defense. A jury found John Sr. guilty of aggravated assault and
recommended a three-year sentence, but that he be placed on community supervision. The trial
court sentenced John Sr. to a three-year sentence but placed him on five years' community
supervision. John Sr. appeals this conviction pro se, and we construe his brief to raise issues of
(1) the sufficiency of the evidence to support the conviction and the sufficiency of the evidence on
which the jury rejected John Sr.'s theory of self-defense, and (2) alleged error in excluding evidence
of a medical diagnosis concerning John Jr. We find the evidence is legally and factually sufficient
to allow a jury to find the elements of the offense and to find against John Sr. on the self-defense
theory and that there was no error in excluding the medical diagnosis of John Jr. We affirm the
judgment. 
I.         SUFFICIENCY OF THE EVIDENCE
            While John Jr. and his friends were asleep at the Iverson house, John Sr. awoke to discover
that the cover had fallen off the thermostat. Angry at the destruction and suspecting that his son had
something to do with it, John Sr. went to one of the sleeping boys in the living room and started
hitting him on the head and cursing about the thermostat. After hitting the boy a few times, John
Sr. discovered that this boy was not his son; rather, it was Scott Estes, a friend of John Jr. John Sr.
apologized to Estes and moved over to the other couch, where he began hitting the boy and cursing
more about the thermostat. This young man was, in fact, John Jr. 
            According to Estes' testimony, after John Sr. hit John Jr. two or three times, John Jr. got up
off the couch and began to fight back. Several blows were exchanged between father and son. 
Estes, in an attempt to get out of the way, went outside the front door into the front yard. One to two
minutes later, John Jr. also came outside and urged his father to come outside and "fight like a man." 
John Jr. then paced around the yard and walked a short distance away from the house. Photographs
of the scene show approximately twelve to fifteen feet between the front door and where John Jr.
was when he was shot. 
            Approximately two minutes after John Jr. came outside, John Sr. stepped outside the front
door and fired a nine millimeter handgun at John Jr., who, according to Estes, said "Dad, don't
shoot." John Jr. fell to the ground, and John Sr. went back inside the house, called 9-1-1, then began
to tend to his injured eye. Estes' testimony and all other evidence in the record indicate that John
Jr. was unarmed at the time of the shooting.
            John Jr. was taken into emergency surgery for the gunshot wound to his lower abdomen. 
The emergency room physician on duty when John Jr. came in testified that the bullet pierced John
Jr.'s bladder and damaged his prostate organ and muscles throughout the pubic region and that, as
a result, he would likely have some permanent damage to his bladder and that other damage will not
become apparent until later in John Jr.'s life. 
A.        Standards of Review
            When reviewing legal sufficiency of the evidence to support a verdict, we view all of the
evidence in the light most favorable to the verdict, asking whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia,
443 U.S. 307 (1979); Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). In reviewing
the legal sufficiency of the evidence to support rejection of a defense such as self-defense, we
examine all of the evidence in the light most favorable to the verdict to determine whether any
rational trier of fact could have found the essential elements of the offense and also could have
found against the defendant on the self-defense issue beyond a reasonable doubt. Saxton v. State,
804 S.W.2d 910, 914 (Tex. Crim. App. 1991).
            The defendant has the burden of producing some evidence to support the claim of
self-defense. Zuliani v. State, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). Once the defendant
produces such evidence, the State has the burden of disproving the defense. Id. The burden of
persuasion does not require the State to produce evidence; rather, it requires only that the State prove
its case beyond a reasonable doubt. Id. When the jury finds the defendant guilty, it implicitly finds
against the defensive theory. Id.
            When reviewing a challenge to the factual sufficiency of the evidence to support the
conviction, we are required to determine whether, considering all the evidence in a neutral light, the
jury was rationally justified in finding guilt beyond a reasonable doubt. Zuniga v. State, No. 539-02,
2004 Tex. Crim. App. LEXIS 668, at *20 (Tex. Crim. App. Apr. 21, 2004). There are two ways in
which we may find the evidence to be factually insufficient. Id. First, if the evidence supporting
the verdict, considered alone, is too weak to support the jury's finding of guilt beyond a reasonable
doubt, then we must find the evidence insufficient. Id. Second, if—when we weigh the evidence
supporting and contravening the conviction—we conclude that the contrary evidence is strong
enough that the State could not have met its burden of proof, we must find the evidence insufficient. 
Id. "Stated another way, evidence supporting guilt can 'outweigh' the contrary proof and still be
factually insufficient under a beyond-a-reasonable-doubt standard." Id. If the evidence is factually
insufficient, then we must reverse the judgment and remand for a new trial. Clewis v. State, 922
S.W.2d 126, 135 (Tex. Crim. App. 1996). This is also the test when reviewing a defendant's
challenge to the rejection of the defendant's assertion of self-defense. Zuliani, 97 S.W.3d at 594.



B.        The Evidence is Legally Sufficient
            A person commits aggravated assault if the person commits assault as defined in Tex. Pen.
Code Ann. § 22.01 (Vernon 2003) and the person: (1) causes serious bodily injury to another,
including the person's spouse; or (2) uses or exhibits a deadly weapon during the commission of the
assault. Tex. Pen. Code Ann. § 22.02 (Vernon Supp. 2004).
            The evidence adduced at trial showed that John Sr. stepped outside the front door and fired
his nine millimeter handgun at John Jr. John Sr. admits he intentionally shot his son, but claims to
have done so to disable the attack the boys were planning on him. This evidence is sufficient to
enable a rational trier of fact to find each element of aggravated assault beyond a reasonable doubt. 
The evidence supporting the verdict is not too weak to support the jury's finding of guilt beyond a
reasonable doubt. Nor is the weight of evidence contrary to the verdict strong enough that the State
could not have met its burden of proof. 
C.        Theory of Self-Defense
            A person is justified in using force against another when and to the degree he or she
reasonably believes the force is immediately necessary to protect himself or herself against the
other's use or attempted use of unlawful force. Tex. Pen. Code Ann. § 9.31(a) (Vernon 2003). 
Special rules apply to the use of deadly force. See Tex. Pen. Code Ann. § 9.31(d) (Vernon 2003). 
A person is justified in using deadly force against another if the following requirements are satisfied:
(1)if he would be justified in using force against the other under
Section 9.31;
(2)if a reasonable person in the actor's situation would not have retreated;
and
(3)when and to the degree he reasonably believes the deadly force is
immediately necessary:
(A) to protect himself against the other's use or attempted use of
unlawful deadly force; or
(B) to prevent the other's imminent commission of aggravated
kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or
aggravated robbery.
Tex. Pen. Code Ann. § 9.32(a) (Vernon 2003).
            Deadly force is a force intended to cause or is capable of causing, as used or intended to be
used, serious bodily injury or death. Tex. Pen. Code Ann. § 9.01 (Vernon 2003). No one disputes
the fact that shooting John Jr. with the handgun was deadly force. So, John Sr. would have had the
right to use deadly force in self-defense if a reasonable person would not have retreated and would
have reasonably believed the use of deadly force was immediately necessary to defend against John
Jr.'s use or attempted use of deadly force. See Tex. Pen. Code Ann. § 9.31 (Vernon 1994 & Supp.
1999); Frank v. State, 688 S.W.2d 863, 868 (Tex. Crim. App. 1985); Juarez v. State, 886 S.W.2d
511, 514 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). 
            1.         Right to Defend
            One does have the right to defend against a reasonable appearance and apprehension of
apparent danger to the same extent as against actual danger. Dyson v. State, 672 S.W.2d 460, 463
(Tex. Crim. App. 1984). In order to justify conduct, a defendant must act on a reasonable belief that
the use of force was immediately necessary to protect himself or herself, or another. Frank, 688
S.W.2d at 868. "Reasonable belief" means a belief that would be held by an ordinary and prudent
person in the same circumstances as the actor. Tex. Pen. Code Ann. § 1.07(a)(42); Fielder v. State,
756 S.W.2d 309 (Tex. Crim. App. 1988). In determining whether a defendant had a reasonable
belief that action was immediately necessary for his or her own protection, the facts and the
circumstances must be judged from the viewpoint of the defendant alone. Juarez, 886 S.W.2d at
514. The question of whether the conduct was justifiable is not to be viewed in the light of later
events, but by what the defendant reasonably believed at the time. See id.
            No evidence was adduced at trial that, at the time John Sr. shot John Jr., John Jr. posed a
threat of deadly force to John Sr. 
            John Sr. described the boys' behavior as very destructive and withdrawn, even aggressive. 
He described that, after he confronted the boys regarding their behavior, he noticed a pool cue
handle behind the door of the den. While he said he interpreted that as a threat to him, he also stated
that he ignored it. Later, at some time before the shooting, John Sr. simply moved the pool cue. 
John Sr. also testified that John Jr. had a machete that he wanted to sharpen. John Sr. made
suggestions as to how John Jr. could sharpen the machete, which would indicate that John Sr. did
not have a great deal of fear regarding it. He stated that John Jr. "bowed up [to him] twice" and that,
although neither boy had lifted a weapon against him, they were "planning on it." He also complains
about the boys' general destruction of his home and disregard for his personal property. 
            While testimony from John Sr. and his ex-stepdaughter does indicate that the boys were
somewhat destructive to the home and were not well behaved, it does not show that an ordinary
prudent person would have believed that, at that moment, when his unarmed son was in the front
yard, immediate action was necessary to protect himself. In his statement to police, John Sr.
summed up the incident, admitting that "things had gotten out of hand, on my part." John Sr. fails
to satisfy the first of three prerequisites that would justify his use of deadly force against his son. 
Likewise, he cannot satisfy the other two requirements. 
            2.         Duty to Retreat
            Another prerequisite to justified use of deadly force is that a reasonable person in the actor's
situation would not have retreated. See Frank, 688 S.W.2d at 868. In other words, use of deadly
force is justified only when retreat is unreasonable. See id. Some evidence of inability to retreat
is all that is necessary to satisfy this condition for the use of deadly force. As to the requirement of
retreat before using deadly force, an accused is held to a standard of reasonable conduct based on
his or her reasonable fear of death or serious bodily injury, viewed from the accused's standpoint at
the time. Juarez, 886 S.W.2d at 514. The test is whether a reasonable person in the actor's situation
would have retreated. In determining whether a reasonable person in the defendant's situation would
have retreated, the word "situation" means a combination of circumstances at a given moment.
            Even assuming, arguendo, that John Sr. was reasonable in thinking that John Jr. was
threatening him with deadly force, John Sr. is unable to bring forth even some evidence that he
could not have retreated. To the contrary, he had the perfect retreat: lock the doors, telephone
police, and remain in the house until help arrived. Instead, he went outside the door of the house
and shot John Jr.
            3.         Immediate Necessity to Use Deadly Force Against Unlawful Deadly Force
            There must be an immediate necessity for action in order for the use of either nondeadly or
deadly force to be justified. Tex. Pen. Code Ann. §§ 9.31–.34 (Vernon 2003). A person is not
justified in defending against future action; the danger must be imminent. See Smith v. State, 638
S.W.2d 208, 210 (Tex. App.—Fort Worth 1982, no pet.). 
            In his statement to police shortly after the shooting, John Sr. admits that he was concerned
about putting an end to the "future threats" and the boys' intentions of murdering him and that he
shot his son to "disable him" and "discourage . . . the other boys." Even if we were to assume that
John Jr. was the aggressor and was using deadly force to inflict John Sr.'s bloody nose and eye
injury, the immediacy of the need to protect against any deadly force had expired when John Jr.
went outside and John Sr. remained inside the house. Even if John Sr. had been in fear of his life,
the opportunity to retreat and seek help presented itself at the point at which father and son were
separated.
            Rather than remaining behind locked doors and calling police, John Sr. went to his room,
grabbed his gun, and sought out John Jr. When he stepped outside the safety of the house to fire the
gun at his unarmed son, the shooting took on a more retaliatory nature rather than a defensive one. 
The jury relied on legally and factually sufficient evidence in rejecting John Sr.'s self-defense
argument. 
II.       EXCLUSION OF EVIDENCE
            John Sr. also contends the trial court erred in excluding a physician's diagnosis of John Jr.
after the shooting. In that diagnosis, the doctor expressed her opinion that John Jr. had a significant
personality disorder, stating that he "expressed hate and dislike of his parents" and made
"[c]omments regarding killing his father." Defense counsel advanced able arguments that the
diagnosis should be admitted to support John Sr.'s reasonable belief that he was in imminent danger. 
The trial court, however, determined the post-shooting diagnosis was irrelevant and excluded it on
that basis. 
A.        Standard of Review
            An item of evidence is relevant if it has "any tendency to make the existence of any fact that
is of consequence to the determination of the action more probable or less probable than it would
be without the evidence." Tex. R. Evid. 401. Relevant evidence may be excluded, however, "if its
probative value is substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading the jury, or by considerations of undue delay, or needless presentation of
cumulative evidence." Tex. R. Evid. 403. A trial court's decision in balancing the considerations
under Rule 403 is reviewed for an abuse of discretion and is disturbed on appeal only when the trial
court's decision falls outside the zone of reasonable disagreement. Montgomery v. State, 810 S.W.2d
372, 391–92 (Tex. Crim. App. 1990) (op. on reh'g).
B.        Exclusion of Post-Shooting Psychological Evaluation
            When self-defense is raised, "the [victim]'s reputation for violence and commission of prior
specific acts of violence against third parties which are known to the defendant are probative of
whether the defendant reasonably believed the force he used was immediately necessary to protect
himself." Fielder, 756 S.W.2d at 320 n.14; see Thompson v. State, 659 S.W.2d 649, 653 (Tex. Crim.
App. 1983). 
            Here, the psychological evaluation of John Jr. performed after the shooting cannot be used
to justify John Sr.'s use of deadly force. The trial court's exclusion of the evidence was proper in
that, considering the degree of the injury at the hand of his own father, feelings of hostility and anger
toward John Sr. would be reasonable at that point. Also, this diagnosis may or may not be consistent
with John Jr.'s feelings toward his father before the shooting. Clearly, John Sr. could not have been
relying on this diagnosis at the time of the shooting, since the doctor had not seen John Jr. at that
point. Since the time of the shooting is the relevant time frame during which we examine John Sr.'s
actions and his state of mind, we must focus on what John Sr. knew at the time of the shooting. The
trier of fact must concentrate on John Sr.'s state of mind when he shot John Jr., rather than what, if
any, personality disorders John Jr. may have had. Any evidence of his violent nature that surfaced
after the shooting, therefore, is at best only minimally relevant. Its relevance is substantially
outweighed by the danger of unfair prejudice or confusion of the issues concerning John Sr.'s
assertion of self-defense. The trial court did not abuse its discretion in excluding the post-shooting
psychological evaluation of John Jr.
III.      INEFFECTIVE ASSISTANCE OF COUNSEL
            John Sr. also complains that his trial counsel was ineffective for failing to seek out and
interview John Sr.'s neighbors as potential witnesses. 
A.        Standard of Review 
            We evaluate the effectiveness of counsel under the standard enunciated in Strickland v.
Washington, 466 U.S. 668 (1984). See Hernandez v. State, 726 S.W.2d 53, 56–57 (Tex. Crim. App.
1986). To prevail on his claim, John Sr. must show (1) counsel's performance fell below an
objective standard of reasonableness, and (2) a reasonable probability exists that, but for trial
counsel's errors, the result would have been different. See Strickland, 466 U.S. at 687–88. 
Appellant has the burden of proving ineffective assistance of counsel by a preponderance of the
evidence. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).
            When the record is silent regarding the motivation of counsel's tactical decisions, the
appellant usually cannot overcome the strong presumption that counsel acted reasonably. Mallett
v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). In most cases, the record on direct appeal is
insufficient to review claims of ineffective assistance of counsel. See Thompson, 9 S.W.3d at
813–14. "If counsel's reasons for his conduct do not appear in the record and there is at least the
possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's
decisions and deny relief on an ineffective assistance claim on direct appeal." Ortiz v. State, 93
S.W.3d 79, 88–89 (Tex. Crim. App. 2002). When facing a silent record as to defense counsel's
strategy, an appellate court will not speculate as to counsel's tactics or reasons for taking or not
taking certain actions. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). The failure
to seek out and interview potential witnesses is considered ineffective assistance of counsel when
the inaction precludes the accused from advancing a viable defense. See Ex parte Duffy, 607 S.W.2d
507, 517 (Tex. Crim. App. 1980), overruled on other grounds, Hernandez v. State, 988 S.W.2d 770
(Tex. Crim. App. 1999).
B.        Absence of Neighbors' Testimony
            John Sr. has not shown that his neighbors' testimony would have supported his assertion of
self-defense. John Sr. insists his neighbors expressed their fear of John Jr. and his friends. John Sr.
contends this testimony would lend strength to his defense. Ultimately, since the record contains
no evidence of what testimony the neighbors could have provided, we cannot determine whether
they could have supplied facts that would have supported John Sr.'s claim of self-defense. See
Melancon v. State, 66 S.W.3d 375, 381 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). We find
it nearly impossible, however, to imagine how the neighbors' expressions of fear would justify John
Sr.'s use of deadly force under these circumstances. At any rate, John Sr. has not shown this Court
that he was harmed by the absence of the neighbors' testimony. Failure to make the required
showing of either deficient performance or sufficient prejudice defeats a claim of ineffective
assistance of counsel claim. Strickland, 466 U.S. at 700.
IV.      CONCLUSION
            We conclude that legally and factually sufficient evidence supports the jury's verdict in this
case and that the trial court acted within its discretion when it excluded the post-shooting
psychological evaluation of John Jr. Finally, because John Sr. has not shown that his neighbors'
testimony would support his theory of self-defense, he cannot prevail on his ineffective assistance
of counsel claim. We overrule his points of error and affirm the trial court's judgment.
 


                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          July 7, 2004
Date Decided:             August 2, 2004

Do Not Publish